**SO ORDERED.**

**SIGNED this 30 day of March, 2007.**



*Dale L. Somers*
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

GARY LEE HUNTINGTON,

               DEBTOR.

CASE NO. 06-11701
CHAPTER 7

**MEMORANDUM AND ORDER ADDRESSING AMOUNTS OF SHERRI PETERS'
CLAIM SECURED BY DEBTOR'S LIVESTOCK AND ADMINISTRATIVE CLAIM**

The matters before the Court are determination of the extent of Sherri Peter's lien on Debtor's livestock and the amount of Sherri Peter's administrative claim for post-petition care and feeding of Debtor's livestock. The issues arise out of the Motion of Sherri Peters to Modify Stay and/or of Administrative Expense Allowance,[1] to which the Trustee objected [2] An evidentiary hearing on this

---

[1] Doc. 38.

[2] Doc. 48.

motion, and the related Objection of Sherri Peters to Exemptions,[3] was held on December 21, 2006. Sherri Peters appeared in person and by her attorney, Eric D. Bruce of Bruce, Bruce & Lehman, L.L.C. The Chapter 7 Trustee, Edward J. Nazar, appearrd in person. Debtor Gary Lee Huntington appeared in person and through his attorney, Todd M. Allison of Klenda, Mitchell, Austerman & Zuercher, L.L.C. There were no other appearances. The Court has jurisdiction.[4]

**FINDINGS OF FACT.**

Based upon the Court record and the testimony and exhibits admitted at the hearing on December 21, 2006, the Court makes the following findings of fact:

1. Movant, Sherri Peters, is the sister or Debtor, but their relationship is hostile.

2. For several years Debtor's cattle were pastured on Sherri's property.

3. On August 25, 2006, Sherri was granted judgment against Debtor in the District Court of Washington County, Kansas, Case No. 05-CV-22, as follows: $14,036.00 for pasture and crop rent for years 2002, 2003, 2004, and 2005; a lien pursuant to K.S.A. 58-2524 on the 2005 crops for the unpaid rent; $9,750.00 for 13 unaccounted calves; $6,382.03 for the feed ($4,955.01), veterinarian bill ($167.02), and 2006 pasture rent ($1,260.00) for care of Debtor's cattle; a lien on Debtor's cattle to pay the cost of feeding and caring for the cattle, together with unpaid pasture rent for

---

[3] Doc. 18.

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A motion for relief from stay and objections to exemptions are core proceedings which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(G) and (B). There is no objection to venue or jurisdiction over the parties.

2005 of $1,800 and for 2006 of $1,260; $7,500 for rental of a White tractor; $4,500 for rental of a Toyota pickup; and $6,023.26 for debts and advancements. In the same judgment, Debtor was awarded judgment against Sherrie for $226 as reimbursement for insurance and $100 for damage to tires.

4. Debtor filed for relief under Chapter 7 on September 7, 2006.

5. On the date of filing, Debtor owned 16 breeder cows, 14 calves, and 10 feeder cattle, all of which were in Sherri's possession.

6. Debtor, a farmer, claimed the 16 breeder cows as exempt tools of the trade.

7. Between July 18, 2006 and the date of the hearing on December 21, 2006, Sherri incurred expenses of $980 to care for cattle, comprised of $600 pasture rent, $240 for milo, and $140 for brome. The milo was purchased in October, and the brome was purchased immediately before the hearing.

8. Subsequent to the date of filing, Mark Koss provided Sherri with feed for cattle having value of $2,815.

9. After July 18, there were 22 cows in Sherri's pasture, 16 owned by Debtor and 6 by Sherri, and 19 calves, five owned by Sherri and 14 by Debtor  Ten feeders owned by Debtor were in Sherri's pasture until sold by the Trustee on December 1, 2006.

10. After September 7, 2006, Mark Koss sustained $2,700 of damage to his milo crop growing on property he rented from Sherri due to cattle from Sherri's pasture getting into the milo field because of broken fencing.

3

11. With Court approval, the Trustee on December 1, 2006, sold 10 feeder cattle owned by Debtor for $6,835.14 and incurred related expense of $661.13. The Trustee has possession of the net proceeds.

12. On December 21, 2006, the Court held an expedited evidentiary hearing on Sherri's objection to Debtor's claim of exemption and motion for relief from stay and/or administrative expense allowance. The Court ruled that: Debtor's 16 cows are exempt; 14 calves and 16 cows belonging to Debtor are currently on Sherri's property; all of Debtor's cattle can be picked up immediately; all Debtor's cattle beyond the 16 exempt cows may be sold by the Trustee; and that any lien in the Debtor's cattle that Sherri and/or the Trustee may have attaches to any sale proceeds of the feeder cattle and calves, and any lien on the calves and exempt cows based upon possession continues notwithstanding removal from Sherri's pasture.

13. The issues of the amount of Sherri's claim secured by a lien on Debtor's cattle, or proceeds of cattle, and of Sherri's administrative claim for post-petition care and feeding of Debtor's cattle were taken under advisement.

**CONTENTIONS OF THE PARTIES.**

Sherri Peters contends that she has a pre-petition claim of $48,644.56, $31,168.03 of which is secured by Debtor's cattle, an administrative claim for post-petition care and feeding of Debtor's cattle in the amount of $2,815.00, and a claim for $2,700 in milo damage in the summer of 2006 due to Debtor's cattle being in Mark Koss milo crop. The Debtor contends that the pre-petition secured claim is $6,382.03, that Debtor has no liability for the milo crop damage, and that the post-petition feed bill is less than claimed.

**CONCLUSIONS OF LAW.**

    **A. The Amount of Sherri's Pre-petition Claim Secured by Debtor's Cattle.**

The Court finds that Sherri has a pre-petition claim secured by Debtor's cattle of $5,122.03 for care and feeding of cattle, $1,800 for 2005 pasture rent, and $1,260 for 2006 pasture rent, for a total of $8,182.03. These amounts are evidenced by the state court judgment, which this Court is bound to follow.[5]

The state court judgment of $1,260 for 2006 pasture rent is 70% of the annual rent of $1,800. No testimony was presented about the reason for the reduction of the 2006 rent to 70% of the annual rent. From review of the state court judgment, the Court concludes it was determined to be the rent for 70% of the year and the annual rent was not reduced 70% because Debtor owned 70% of the cattle in the pasture. Accordingly the Court finds Sherri was awarded a judgment against Debtor for 2006 pasture rent for approximately 9 months of the year.

The Court finds the $5,122.03 claim for feed and care is secured by a lien on cattle pursuant to K.S.A. 58-207. The $3,060 for pasture rent is secured by an agister's lien, pursuant to K.S.A. 58-220. As required for these statutory liens, prior to and at the time of the state court judgment and on the date of filing, Sherri had possession of Debtor's 16 exempt cows, 10 feeders, and 14 calves.[6] In accord with this Court's prior order, when Sherri lost possession of these cattle, the lien attached to the proceeds of the feeders which were sold by the Trustee and remained on the exempt breeder cows and the calves, and their proceeds if sold. In order to preserve the Debtor's exemptions,

---

    [5] 28 U.S.C. § 1738.

    [6] In addition, the state court judgment found Sherri's claim for feed and care was secured by Debtor's cattle pursuant to K.S.A. 58-207 and her claim for pasture rent secured by Debtor's cattle pursuant to K.S.A. 58-220.

5

Case 06-11701   Doc# 63   Filed 03/30/07   Page 5 of 8

Sherri's secured claim shall be satisfied first from the proceeds of the feeders, next from the calves, and finally from the exempt cows.

The Court agrees with the Debtor that pasture rent for years prior to 2005 is not secured by Debtor's cattle pursuant to an agister's lien provided for in K.S.A. 58-220. An agister's lien is of limited duration.[7] The statute provides the lien expires if "foreclosure proceeding are not commenced on or before December thirty-first following the season for which such rent was owing."[8]

The Court rejects Sherri's assertion that the state court judgment against Debtor for $9,750 for unaccounted for calves is secured by the Debtor's cattle. The state court judgment does not so hold, and this Court knows of no basis to find Debtor's cattle subject to a lien for this claim. A state court in personum judgment constitutes a lien on the real property of the judgment debtor in the county where the judgment is rendered, but this lien does not attach to personal property.[9] Sherri has not identified any common law or statutory basis for such a lien.

Sherri asserts a claim for pre-petition care and feeding of Debtor's cattle from July 18, 2006, the date of the state court trial, to September 7, 2006, the date of filing. Sherri testified that she incurred $980 in costs between July 18, 2006 and the December 21, 2006 hearing, comprised of $600 pasture rent, $240 for milo, and $140 for brome. She did not provide a separate itemization for the pre- and post-petition portions of these expenses. However, she testified the milo and brome were both purchased post-petition. The cost for this feed cannot be the basis for a pre-petition claim.

---

[7] Keith G. Meyer, *Kansas's Unique Treatment of Agricultural Liens*, 53 U. Kan. L. Rev. 1141, 1180 (2005).

[8] K.S.A. 58-220.

[9] K.S.A. 60-2204.

The $980 included pasture rent of $600, but the Court concludes Sherri has already been compensated for this rent since the state court judgment for 2006 rent in the amount of $1,260 was for approximately 9 months of rent. Sherri provided no evidence that the state court rent award excluded rent from July 18 to the date of filing. Sherri's claim for care and feed of the cattle between July 18 and the date of filing is denied.

**B. Post-petition Claim.**

There are two elements of the claim for post-petition costs of care and feeding of Debtor's cattle. The first is Mr. Koss's bill to Sherri for $2,815 for feed. The Court finds that these costs were incurred after September 6, 2006, for all cattle on Sherri's pasture, which included Sherri's 6 cows (and calves) in addition to Debtor's 16 cows (and feeders/calves). Based upon the ratio of Debtor's cows to the total cows (16 divided by 22), the Court finds that 73% of the cost, or $2,047, is attributable to the estate. The Court finds this amount constitutes an administrative expense within the meaning of 11 U.S.C. § 503, as it is a claim for the actual and necessary cost of preservation of Debtor's cattle.

The second element of the claim for post-petition care and feeding of cattle is based upon Sherri's testimony that she incurred, in addition to the bill of Mr. Koss, costs of $980 for care and feed between July 18 and December 21, 2006, comprised of $600 pasture rent, $240 for milo, and $140 for brome. Although Sherri testified that she had not separately calculated the portion of the $980 attributable to the pre- and post-petition care of the cattle, she did testify that the milo was delivered on October 4 and the brome was delivered on the day prior to the hearing. The feed costs are therefore properly considered post-petition expenses. However, these feed costs, like those evidenced by Mr. Koss's bill, must be reduced to reflect that the feed was for both Debtor's and

7

Sherri's cattle. Accordingly, the Court will allow 73% of $280, or $204.40 as additional administrative expense for preservation of property of the estate. The Court finds that the administrative claim should include rent for September 6 until the cattle were removed from Sherri's pasture. Sherri claims $600, which the Court allows as an administrative expense. It is equal to four months rent at the rate of $1,800 per year, the annual pasture rent claimed by Sherri in the state court litigation.

Finally, the Court disallows the claim for damage to the milo crop. Although the crop was damaged post-petition in part by Debtor's cattle, the Court has not been provided and its own research has not disclosed any basis for finding this claim to be an administrative expense or otherwise allowable. The claim is distinguishable from the allowed feed costs. It was not presented as the cost of milo fed to the cattle. The value was calculated based upon crop damage resulting from the cattle not being securely fenced in the pasture. This claim by Mr. Koss against Sherri for which she seeks payment from Debtor has characteristics of a tort, but there was no evidence that Debtor had a duty to keep Sherri's fences mended or breached that duty.

The total allowed administrative expense claim is $2,851.40, comprised of feed provided by Mr. Koss costing $2,047, feed provided by Sherri costing $204.40, and pasture rent of $600.

**CONCLUSION.**

For the foregoing reasons, the Court holds that Sherri has a claim of $8,182.03 secured by Debtor's feeders, calves, and breeding cows and the proceeds thereof. The Court also holds that Sherri has an administrative claim of $2,851.40 for post-petition care and feed of Debtor's cattle.

**IT IS SO ORDERED.**

###

8